UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SUTTER'S PLACE, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br>    Defendant. | Case No.   5:20-cv-09384-EJD<br><br>**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. No. 20 |

Plaintiff Sutter's Place, Inc. ("Sutter's Place") asserts claims for breach of the implied covenant of good faith and fair dealing and breach of contract against Defendant Zurich American Insurance Company ("Zurich"). Dkt. No. 1-2, Ex. A ("Compl."). Before the Court is Zurich's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Def. Zurich Am. Ins. Co.'s Mot. for J. on the Pleadings ("Mot."), Dkt. No. 20. The Court finds the motion appropriate for decision without oral argument pursuant to Civil Local Rule 7-1(b). Having considered the parties' written submissions, the Court GRANTS the motion.

**I.    BACKGROUND**

Zurich is a New York corporation with its principal place of business in New York. Compl. ¶ 18. Sutter's Place operates the Bay 101 Casino located in San Jose, California, which contains 49 gaming tables and four restaurants. *Id.* ¶¶ 3, 17, 36. Sutter's Place purchased an "all risk" commercial insurance policy from Zurich ("the Policy") beginning December 1, 2019.

The Policy's Business Income (Excluding Extra Expense) coverage states in relevant part:

> We will pay for the actual loss of "**business income**" you sustain due to the necessary "**suspension**" of your "**operations**" during the "**period of restoration**". The "**suspension**" must be caused by

> <u>direct physical loss of or damage to property</u> at a "premises" at which a Limit of Insurance is shown on the Declarations for Business Income.  The loss or damage must be directly caused by a "**covered cause of loss**".  We will not pay more than the applicable Limit of Insurance shown on the Declarations for Business Income at that "**premises**".[1]

*Id.* ¶¶ 5, 24-25, Ex. 2 at ECF p.134 (underlined emphasis added).  The "period of restoration" begins when "[t]he direct physical loss or damage that causes '**suspension**' of your '**operations**' occurs" and ends on "[t]he date when the location where the loss or damage occurred could have been physically capable of resuming the level of '**operations**' which existed prior to the loss or damage, if the location had been restored to the physical size, construction, configuration, location, and material specifications which would satisfy the minimum requirements necessary to obtain all required building permits, occupancy permits, operating licenses, or similar documents" or "[t]he date when a new permanent location is physically capable of resuming the level of '**operations**' which existed prior to the loss or damage." *Id.*, Ex. 2 at ECF p.79.  A "covered cause of loss" is defined as "a fortuitous cause or event, not otherwise excluded, which actually occurs during this policy period."  *Id.* ¶ 26, Ex. 2 at ECF p.71.

The Policy further includes Extra Expense coverage:

> We will pay for the actual and necessary "**extra expense**" you incur <u>due to direct physical loss of or damage to property</u> at a "**premises**" at which a Limit of Insurance is shown for Extra Expense on the Declarations.  The loss or damage must be directly caused by a "**covered cause of loss**".  We will not pay more than the applicable Limit of Insurance shown on the Declarations for Extra Expense at that "**premises**".

*Id.*, Ex. 2 at ECF p.143 (underlined emphasis added).

The Policy also contains numerous exclusions.  Of particular relevance here is the Microorganism Exclusion, which states:

> We will not pay for loss or damage consisting of, directly or indirectly caused by, contributed to, or aggravated by the presence, growth, proliferation, spread, or any activity of "**microorganisms**", unless resulting from fire or lighting.  Such loss is excluded regardless of any other cause or event, including a "**mistake**",

---

[1] All bolded text within quotation marks denotes specifically defined in the Policy.

Case No.: 5:20-cv-09384-EJD
ORDER GRANTING MOT. FOR J. ON THE PLEADINGS
2

> "**malfunction**", or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause of event would otherwise be covered.
>
> But if a result of one of these excluded causes of loss is a "**specified cause of loss**", other than fire or lighting, we will pay that portion of the loss or damage which was solely caused by that "**specified cause of loss**".
>
> We will also not pay for loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that requires any insured or others to test for, monitor, clean up, remove, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of "**microorganisms**".

Compl. ¶ 33, Ex. 2 at ECF p.91. "Microorganism" is defined as "any type or form of organism of microscopic or ultramicroscopic size including, but not limited to, '**fungus**', wet or dry rot, virus, algae, or bacteria, or any by-product." *Id.*, Ex. 2 at ECF p.76. The Policy also contains a loss of use exclusion: "We will not pay for loss or damage caused by or resulting from loss of market, loss of use, or delay. This exclusion applies even if one of these excluded causes of loss was caused by or resulted from a '**mistake**' or '**malfunction**'." *Id.*, Ex. 2 at ECF p.91.

On March 4, 2020, Governor Gavin Newsom proclaimed a state of emergency in California based on the threat of COVID-19. Compl. ¶¶ 6, 47, Ex. 3 at 1. On March 16, 2020, the Health Officer for the County of Santa Clara issued a "shelter in place" order requiring businesses to cease all non-essential operations and prohibiting access to the casino. *Id.* ¶¶ 8, 51. On March 19, 2020, Governor Newsom issued Executive Order N-33-20, ordering "all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors." *Id.* ¶¶ 8, 52. In compliance with these state and local orders, Sutter's Place suspended business operations at all locations. *Id.* ¶¶ 9, 37. In order to comply with California guidelines for re-opening, Sutter's Place incurred extra expenses for equipment, construction, services, and supplies to abide by social distancing and sanitation rules. *Id.* ¶ 54. Sutter's Place asserts that these state and local orders "constitute a predominant cause" of its losses to this day. *Id.* ¶ 55.

On April 9, 2020, Sutter's Place promptly filed a claim with Zurich under the Policy for "business interruption loss resulting from the government-ordered suspension of its operations."

*Id.* ¶ 56. On August 25, 2020, Zurich issued a letter denying Sutter's Place's claim because (1) Sutter's Place did not claim any direct physical loss of or damage to the casino, and (2) the Policy's Microorganism Exclusion excluded coverage for physical damage or loss based on a virus such as the COVID-19 virus. *Id.* ¶¶ 57-59, Ex. 4. Sutter's Place alleges that Zurich did not perform a full, fair, and balanced investigation and that its denial was insufficient and based on an erroneous interpretation of the Policy. *Id.* ¶¶ 57-60.

On September 8, 2020, Sutter's Place filed this action in the Superior Court for the County of Santa Clara. Dkt. No. 1-2, Ex. A. On December 29, 2020, Zurich removed the action to federal court, citing diversity jurisdiction. Dkt. No. 1. This motion followed on July 23, 2021. Dkt. No. 20.

## II.  LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (brackets and internal quotation marks omitted). Like a motion to dismiss under Rule 12(b)(6), a motion under Rule 12(c) challenges the legal sufficiency of the claims asserted in the complaint. *See id.* Indeed, a Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion, and courts apply the "same standard." *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (explaining that the "principal difference" between Rule 12(b)(6) and Rule 12(c) "is the timing of filing"); *see also U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).

In considering the motion, the Court assumes the complaint's allegations truth and draws all reasonable inferences in the non-movant's favor. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Like a motion under Rule 12(b)(6), in addition to considering the allegations of the complaint, the Court may also consider materials subject to judicial notice. *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 (9th Cir. 1999). A Rule 12(c) motion for judgment on the

pleadings may thus be granted if, after assessing both the complaint and matters subject to judicial notice, it appears "beyond doubt that the [non-moving party] cannot prove any facts that would support his claim for relief." *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

Although Rule 12(c) makes no mention of leave to amend, "courts have discretion both to grant a Rule 12(c) motion with leave to amend . . . and to simply grant dismissal of the action instead of entry of judgment." *Mitchell v. Corelogic, Inc.*, No. SA 17-CV-2274-DOC (DFMx), 2019 WL 7172978, at *4 (C.D. Cal. Nov. 20, 2019) (citing *Carmen v. S.F. Unified Sch. Dist.*, 982 F. Supp. 1396, 1401 (N.D. Cal. 1997) and *Moran v. Peralta Cmty. College Dist.*, 825 F. Supp. 891, 893 (N.D. Cal. 1993)); *see also Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131, 1134-35 (9th Cir. 2012) (affirming district court's dismissal under Rule 12(c) but reversing for failure to grant leave to amend). Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When granting judgment on the pleadings, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted).

## III. DISCUSSION

### A. Request for Judicial Notice

"Because motions for judgment on the pleadings are 'functionally identical' to Rule 12(b)(6) motions, when ruling on either type of motion 'courts must consider the complaint in its entirety, as well as other sources . . ., in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1201 (9th Cir. 2021) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Cafasso*, 637 F.3d at 1054 n.4)) (internal quotation marks and citations omitted). A

Case No.: 5:20-cv-09384-EJD
ORDER GRANTING MOT. FOR J. ON THE PLEADINGS
5

1   court generally may not consider any material beyond the pleadings when ruling on a Rule
2   12(b)(6) motion. If matters outside the pleadings are considered, "the motion must be treated as
3   one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, documents
4   appended to the complaint, incorporated by reference in the complaint, or which properly are the
5   subject of judicial notice may be considered along with the complaint when deciding a Rule
6   12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018); *see also Hal*
7   *Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).
8   Likewise, a court may consider matters that are "capable of accurate and ready determination by
9   resort to sources whose accuracy cannot reasonably be questioned." *Roca v. Wells Fargo Bank,*
10  *N.A.*, No. 15-cv-02147-KAW, 2016 WL 368153, at *3 (N.D. Cal. Feb. 1, 2016) (quoting Fed. R.
11  Evid. 201(b)).

12  Zurich requests that the Court take judicial notice of approximately 330 decisions from
13  courts across the country on similar insurance claims related to COVID-19. Dkt. No. 21. Sutter's
14  Place does not appear to object to the request. *See* Plf. Sutter's Place, Inc.'s Opp'n to Mot. for J.
15  on the Pleadings ("Opp'n"), Dkt. No. 26. Because the Court need not rely on these decisions to
16  resolve Zurich's motion, the Court DENIES AS MOOT the request for judicial notice.

17  **B.    Rule 12(c)**

18  Zurich offers two primary arguments for why the Court should dismiss the action. First,
19  Zurich argues that Sutter's Place cannot plead facts establishing a "direct physical loss of or
20  damage to" property that would entitle it to Business Income or Extra Expense coverage under the
21  Policy. Second, Zurich contends that the Microorganism Exclusion bars Sutter's Place's claim
22  because the definition of "microorganism" under the Policy includes a virus. Zurich urges the
23  Court to join other California federal district courts that have (1) concluded that the various state
24  and local stay-at-home orders do not constitute the requisite direct physical loss of or damage to
25  property, and (2) enforced exclusions for viruses.

26  Before briefing closed and the matter was submitted, the Ninth Circuit issued its opinion in
27  *Mudpie, Inc. v. Travelers Casualty Insurance Company of America* ("*Mudpie II*"), 15 F. 4th 885

28  Case No.: 5:20-cv-09384-EJD
    ORDER GRANTING MOT. FOR J. ON THE PLEADINGS
    6

(9th Cir. 2021). Zurich asserts that *Mudpie II* is on all fours with this action and compels the Court to rule in Zurich's favor.

The Court agrees with Zurich. *Mudpie II*'s relevant policy provisions are virtually identical to the relevant provisions in the Policy before the Court: "We will pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration'. The 'suspension' must be caused by *direct physical loss of or damage to property* at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss." *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.* ("*Mudpie I*"), 487 F. Supp. 3d 834, 838 (N.D. Cal. 2020) (emphasis added). The "period of restoration" "[began] 24 hours after the time of direct physical loss or damage" and "[ended] on the date when the property . . . should be repaired, rebuilt or replaced with reasonable speed and similar quality." *Id.* at 840. The *Mudpie* policy also included a virus exclusion. *Id.* at 837, 838. The district court granted Travelers' motion to dismiss, finding that Mudpie "fail[ed] to allege any intervening physical force beyond the government closure orders" and was therefore "not entitled to Business Income or Extra Expense coverage" under Mudpie's policy.

The Ninth Circuit affirmed the district court's dismissal of Mudpie's suit, concluding—based on many of the same California cases that Sutter's Place now cites—that "direct physical loss of or damage to" property requires a "distinct, demonstrable, physical alteration of the property." *Mudpie II*, 15 F. 4th at 890–93. The Ninth Circuit determined that this interpretation of the phrase is also consistent with other provisions in the policy, including the definition of "period of restoration." *Id.* The Ninth Circuit further determined that Mudpie's policy's virus exclusion barred coverage for Mudpie's losses. *Id.* at 89–94.

The facts of this case are materially indistinguishable from *Mudpie II*. Like the *Mudpie II* plaintiff, Sutter's Place does not allege any "distinct, demonstrable, physical alteration" of the casino, and nor does Sutter's Place argue that it could plausibly do so. Sutter's Place advances arguments that are similar to those the *Mudpie II* plaintiff made. *Compare Mudpie II*, 15 F. 4th at 889 (Mudpie arguing "that its inability to operate and occupy its storefront following the

Case No.: 5:20-cv-09384-EJD
ORDER GRANTING MOT. FOR J. ON THE PLEADINGS
7

government closure orders [wa]s a direct physical loss of property covered by [the Policy]") *and id.* at 893 ("Mudpie argues that its losses are not subject to the policy's Virus Exclusion because the loses were caused by Stay at Home Orders that restricted Mudpie's use of its property, not directly by the virus.") *with* Opp'n at 2 ("While 'damage to' property may require some type of physical alteration, the 'loss of' that property does not. Rather, it includes the loss of the beneficial use of or possession of the property.") *and id.* at 10 ("The ordinary meaning of the phrase 'direct physical loss of' therefore includes the deprivation or loss of possession of a physical space . . . resulting directly from a shutdown order, even if there is no physical harm or damage to the physical space.") *and id.* at 17–21 (arguing that the government orders were the predominant cause of Sutter's Place's loss, not the virus). The Ninth Circuit has rejected these arguments.

Accordingly, consistent with *Mudpie II*, the Court finds as a matter of law that Sutter's Place was not entitled to coverage under the Policy because it did not plead a distinct, demonstrable, physical alteration of the property, and that its claims are barred under the Microorganism Exclusion. *Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir. 1987) (stating that district courts are bound to follow the precedents of their own circuit).

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Zurich's motion for judgment on the pleadings. Because Sutter's Place does not request leave to amend, and because the Court concludes that amendment would be futile, the Court DISMISSES the action.

The Clerk of the Court shall close the file.

**IT IS SO ORDERED.**

Dated: March 14, 2022

EDWARD J. DAVILA
United States District Judge

Case No.: 5:20-cv-09384-EJD
ORDER GRANTING MOT. FOR J. ON THE PLEADINGS
8